IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-491-BO

| | |
|---|---|
| PATRICK D. LANDS, | ) |
|         Plaintiff, | ) |
| | ) |
| v. | )    O R D E R |
| | ) |
| CITY OF RALEIGH, | ) |
|         Defendant. | ) |

This cause comes before the Court on defendant's motion to dismiss plaintiff's complaint. The parties have responded, the motion is ripe for adjudication, and hearing was held on this matter before the undersigned on May 19, 2022 in Elizabeth City, North Carolina. For the reasons that follow, the motion to dismiss is denied.

## BACKGROUND

Plaintiff worked as a police officer at the Raleigh Police Department from December 8, 2008 until his termination on November 25, 2019. During his employment, plaintiff was promoted to the rank of Detective. In August 2017, plaintiff's father was in a serious car accident and plaintiff asked for permission to take time away from work to care for his father. Plaintiff was approved to take leave pursuant to the Family Medical Leave Act (FMLA) beginning on September 13, 2017. The City of Raleigh then approved plaintiff to take an additional 11 months of paid sick leave, pursuant to City policy. While plaintiff was on leave, plaintiff states that he provided care to his father and assisted with his father's business, Total Construction. Plaintiff did not accept any wages and was allegedly not an employee of Total Construction. The City has a policy prohibiting secondary employment while on leave. Plaintiff returned to work on December 7, 2018.

On July 3, 2019, over six months after plaintiff had returned to work, Raleigh Police Department Captain C.T. Barnett received a complaint about plaintiff from Graham Hunt on behalf

of his mother, Kathy Hunt. Capt. Barnett interviewed Cathy Hunt about her complaint and learned that the Hunts were upset about home repairs that had been left undone by plaintiff or Total Construction. Ms. Hunt found out from her son, not plaintiff, that plaintiff was a police officer. Capt. Barnett encouraged Ms. Hunt to make a formal complaint to Consumer Protection section of the North Carolina Attorney General's Office. On July 11, 2019, the City made a formal complaint against Plaintiff based on Ms. Hunt's allegations. The City's complaint alleged that plaintiff had violated three city policies: City of Raleigh Standard Operating Procedure 300-9A, Leave; Departmental Operating Instruction 1100-01, Conduct Unbecoming; and DOI 1106-07, Secondary Employment. Plaintiff was notified of the complaint on August 16, 2019.

Plaintiff was placed on leave from July 3, 2019 to December 29, 2019 while an investigation into plaintiff's activities while on leave was conducted. Plaintiff was interviewed by Sergeant B.K. Stranahan on August 16, 2019. On November 20, 2019, plaintiff was notified that, in addition to the allegations listed in the July 11, 2019 complaint, the City had added violations of COR SOP 300-20 Family-Medical Leave Policy and DOI 1104-07, Sick Leave. The City concluded that plaintiff was employed by and had conducted business for Total Construction, a business owned by his father, during the approved FMLA leave and sick leave time. The City concluded that plaintiff had violated five policies, FMLA leave, Sick Leave, HR Leave, Secondary Employment, and Conduct Unbecoming, and recommended termination.

Plaintiff alleges that he was never employed by Total Construction and never earned wages from the company. Plaintiff alleges that he was providing direct care for his father and assisted with his father's business affairs while his father as incapable due to his serious injuries. Plaintiff had a pre-termination hearing on November 22, 2019, where he stated that he had done nothing wrong. On November 25, 2019, plaintiff's employment was terminated.

2

Case 5:21-cv-00491-BO   Document 21   Filed 06/16/22   Page 2 of 8

Plaintiff filed this suit on November 29, 2021 and alleges that the City of Raleigh fired him in retaliation for taking FMLA leave. The City filed a motion to dismiss on January 28, 2022. A hearing was held on this motion on May 19, 2022 in Elizabeth City, North Carolina.

## DISCUSSION

Defendant argues that plaintiff's complaint should be dismissed because plaintiff fails to state an FMLA interference claim or an FMLA retaliation claim. As an initial matter, the Court notes that plaintiff has not raised an FMLA interference claim. Plaintiff argues that plaintiff has stated a retaliation claim with both direct and circumstantial evidence. Plaintiff also argues that defendant's explanation that plaintiff was fired for violating internal policies is pretextual.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it

3

accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The FMLA entitles eligible employees to a total of 12 weeks of unpaid leave "in order to care for [a] parent [with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Congress enacted the FMLA to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 202 (4th Cir. 2016) (quoting 29 U.S.C. § 2601(b)(1), (2)). The FMLA makes it unlawful for "any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).[1] Section 2615(a)(2) has been interpreted to "to protect employees from discrimination or retaliation *for exercising their substantive rights under the FMLA.*" *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 245 (4th Cir. 2020) (emphasis in original) (internal quotations omitted), *cert. denied,* 141 S. Ct. 2595 (2021). "The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016).

"To succeed on a claim of retaliation, a plaintiff must show that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Sharif*, 841 F.3d at 203 (internal quotations omitted); *see Khan v. UNC Health Care Sys.*, No. 1:20-CV-977, 2021 WL 4392012, at *9

---

[1] The Court notes that there is some ambiguity as to whether FMLA retaliation claims arise under subsection (a)(1) or (a)(2). The controlling case in this circuit, *Fry v. Rand Constr. Corp.*, does not resolve this, but instead states that it is not necessary to reach the statutory issue because a retaliation claim proven using the *McDonnell Douglas* framework is sufficient to prove a claim under both (a)(1) and (a)(2). 964 F.3d 239, 244 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021) (referencing *McDonnell Douglas Corp. v. Green.* 411 U.S. 792 (1973)). "In both contexts, a plaintiff can either (1) produce direct and indirect evidence of retaliatory animus or (2) demonstrate intent by circumstantial evidence, which we evaluate under the framework established for Title VII cases in *McDonnell Douglas*." *Id.* Because the Court ultimately finds that plaintiff has stated a retaliation claim using the *McDonnel Douglas* framework, this Court will also not reach the issue of which subsection the retaliation should be raised under.

4

(M.D.N.C. Sept. 24, 2021); *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015). The intent of the employer is important when examining a retaliation claim. *See Fry*, 964 F.3d at 245. Intent can be established either by direct evidence of retaliation or through the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green. Fry*, 964 F.3d at 245 (referencing *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 800-06 (1973). Under the burden-shifting framework, a plaintiff must first establish a *prima facia* case of retaliation.[2] *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer to provide "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* "If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination." *Sharif*, 841 F.3d at 203. The plaintiff may satisfy this burden by producing "sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation." *Id.*

Plaintiff will have stated a *prima facia* FMLA retaliation claim if he plausibly alleges that he was engaged in a protected activity when he took FMLA leave, that he suffered an adverse employment action, and that the adverse action was causally connected to plaintiff's taking of FMLA leave. *See id.* First, it is undisputed that plaintiff's termination was an adverse employment action. *See generally Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (finding that termination was an adverse employment action).

Second, the Court finds that plaintiff has made a plausible claim that he engaged in a protected activity when he took FMLA leave. Qualifying employees are be entitled to FMLA leave

---

[2] The Court notes that a plaintiff is not required to make *prima facia* case to survive a motion to dismiss, but it is one way to meet the pleading standard required by Rule 8 of the Federal Rules of Civil Procedure. *See Miller v. Carolinas Healthcare Sys.*, 561 F. App'x 239, 241 (4th Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002)).

5

to care for a parent suffering from a serious health condition. 29 U.S.C. § 2612(a)(1)(C). A "[s]erious health condition" is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C § 2611(11). An employee entitled to FMLA leave is engaging in a protected activity when he takes such leave. *See Yashenko*, 446 F.3d at 551.

Plaintiff states that he was providing necessary medical care to his father contemplated by § 2612(a)(1)(C), and thus he was engaged in a protected activity when he took FMLA leave. Defendant argues that plaintiff was not entitled to FMLA leave and thus not engaged in a protected activity. Defendant argues that plaintiff was not entitled to FMLA leave because plaintiff was allegedly not providing care to his father as defined by § 2611(11). Defendant does not appear to dispute that plaintiff's father suffered from a serious medical condition. Defendant alleges that defendant was impermissibly doing other activities potentially in addition to providing care. Surely it cannot be true that a person taking FMLA leave is prohibited from doing any activity besides providing direct care. This would preclude grocery shopping for themselves, taking their children to school, and all manner of things. Plaintiff states that he was providing care and has stated facts that lead to the plausible inference that plaintiff was providing care. Accordingly, the Court finds that plaintiff was engaged in a protected activity when he took FMLA leave. *See Yashenko*, 446 F.3d at 551.

Third, the Court finds that plaintiff has alleged sufficient facts to make a plausible claim that there was a causal connection between his protected activity of taking FMLA leave and his termination. Defendant admits that it terminated plaintiff for violating internal policies relating to FMLA leave, sick leave, HR leave, secondary employment, and conduct unbecoming. The temporal distance or proximity from plaintiff's taking of FMLA leave and plaintiff's termination

6

is not consequential in this case. The relevant time-period is from when defendant allegedly began investigating plaintiff's leave activities to when defendant terminated plaintiff, which happened promptly. *See generally Yashenko*, 446 F.3d at 551 (finding that closeness in time evidence does not conclusively establish causal connection but can satisfy the making of a *prima facia* case). The facts support the inference that, had plaintiff not been on leave at all, plaintiff would not have been investigated for assisting his father with his business. Plaintiff has stated a plausible causal link between his termination and his FMLA leave. Accordingly, plaintiff has stated a *prima facia* claim of retaliation.

The burden now "shifts to the defendant to provide a legitimate, nonretaliatory reason for taking the employment action at issue." *Boone v. Bd. of Governors of Univ. of N. Carolina*, 858 F. App'x 622, 624 (4th Cir. 2021). Defendant has offered a non-discriminatory reason for plaintiff's termination—that plaintiff violated internal city policies. The Court must next determine whether this reason is pretextual. "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (internal quotation marks omitted). An employer may terminate an employee for violating the employer's policies, but an employer may not base such a decision on the exercise of a protected right. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013). A genuine issue of pretext may exist if an employer's disciplinary action is based on little evidence of wrongdoing. *Id*.

Defendant offers no specific facts to support plaintiff's termination other than his alleged secondary employment with Total Construction. Defendant does not allege that defendant was unhappy with plaintiff's job performance. To the contrary, defendant was promoted to the rank of Detective during the course of his employment. Defendant lists Conduct Unbecoming as a policy

7

that plaintiff allegedly violated but provides no facts as to what conduct violated this policy. Defendant offers allegations that plaintiff misused FMLA and Sick leave, but provides no allegations that defendant was terminated for unsatisfactory job performance. Plaintiff offers facts to rebut defendant's allegation that plaintiff was engaged in secondary employment. Plaintiff states that he was not compensated for assisting his father with his business, was not an employee of his father's business, and only helped his father with his business when he was not providing direct and actual care to his father. It appears that defendant only became dissatisfied with plaintiff when a disgruntled citizen complained about Total Construction. Accordingly, plaintiff has met "the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Vannoy*, 827 F.3d 296, 305 (4th Cir. 2016) (quoting *Yashenko*, 446 F.3d at 551.). Accordingly, plaintiff has plausibly stated a claim that the reason for plaintiff's termination was pretextual and in fact retaliatory.

Taking the facts in the light most favorable to plaintiff, plaintiff has sufficiently stated a FMLA claim of retaliation sufficient to overcome a motion to dismiss.

## CONCLUSION

Accordingly, defendant's motion to dismiss [DE 11] is DENIED.

SO ORDERED, this  15  day of June, 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE