IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH
CAROLINA WESTERN DIVISION
Civil Action No.: 5:21-CV-491-BO

PATRICK D. LANDS,                )
                                 )
                    Plaintiff,   )
                                 )     **DEFENDANT'S SECOND**
         v.                      )     **SUPPLEMENTAL**
                                 )     **RESPONSES TO**
                                 )     **PLAINTIFF'S FIRST SET OF**
CITY OF RALEIGH,                 )     **DISCOVERY REQUESTS**
                                 )     **TO DEFENDANT**
                    Defendant.   )

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the City of
Raleigh (the "City") serves upon Plaintiff Patrick D. Lands ("Plaintiff") by and
through counsel, the following responses and objections to Plaintiff's First Set of
Discovery Requests to Defendant.

## **GENERAL OBJECTION**

1. The City objects to Plaintiff's First Set of Interrogatories in their entirety to
   the extent that they, or the definitions or instructions contained therein, seek
   to impose a duty to respond beyond what is required by the Federal Rules of
   Civil Procedure or previously agreed-upon by the parties and memorialized in
   the Report of the Parties' Planning Meeting [D.E. 16] that was approved and
   adopted by the Court on March 29, 2022 [D.E. 17].

2. The following responses are based on information currently available to the
   City. These responses are given without prejudice to the City's right to produce

or rely on subsequently discovered information.

3. Further discovery, independent investigation, or other analysis may lead to the discovery of additional information, which may lead to additions or changes to these responses.

4. Nothing in these responses is intended to be or should be construed as a waiver of the attorney-client privilege, the work product doctrine, or any other protection. Inadvertent production of such protected information is not intended to be and shall not operate as a waiver of the applicable privilege. Any information withheld on the basis of such privilege will be identified on a privilege log as required by the March 22, 2022 Report of the Parties' Planning Meeting at section (3)(p) of the Discovery Plan [D.E. 16].

5. The City reserves the right to condition the production of documents containing confidential or proprietary information or trade secrets on the Court's issuance of a confidentiality or protective order governing the disclosure of any such information.

6. The production of any documents or information by the City is made without waiver, and with preservation, of any privilege or protection against disclosure afforded to documents containing confidential or proprietary information or trade secrets.

7. The City objects to the Document Requests to the extent that they would require the City to produce documents or information covered by the Personnel Privacy Act, N.C.G.S. § 160A-168, or that would require the City to violate the

privacy interests of others.

**INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS (AND OTHER ITEMS)**

1.  Please state the name of all other employees of the Defendant's Police Department who have been disciplined for any of the same reasons as Plaintiff.

**RESPONSE:      See Responses to Interrogatory 2, which are incorporated in response to Interrogatory 1 by reference herein.**

2.  For each individual identified in number 1, please provide a copy of the employee's personnel file, including a copy of any investigation done into the allegations against the employee:

**RESPONSE:**

**The City objects to this Interrogatory on the grounds that the request for the identity of non-party employees who have been "disciplined for any of the same reasons as Plaintiff" is vague, ambiguous, and overbroad. Without waiving said objections, the City has agreed to provide the following disciplinary files for Raleigh Police Department employees who were investigated for and/or were disciplined from January 1, 2012 through the present for violations of Raleigh Police Departmental Operating Instruction (hereinafter "DOI") DOI 1100-01 (Executive Police/Conduct Unbecoming/Integrity); DOI 1104-07 (Sick Leave);  or DOI 1106-07 (Secondary Employment); or, City of Raleigh Standard Operating Procedure (hereinafter "COR SOP") 300-9A or COR SOP 300-20.**

Furthermore, the City continues to object to this Request and Interrogatory 1 and provides the aforementioned files without waiving its objection on the ground that the files produced in response to this Request and Interrogatory 1 are not relevant to any party's claims or defenses as the City's relevant decisionmakers during the time period in which the events alleged in Plaintiff's Complaint occurred are unaware of any other RPD employee who knowingly applied for, was paid, or otherwise received leave benefits for a year or more to which they knew they were not entitled, and are unaware of any employees who engaged in a lie by omission in order to obtain said benefits. The City does not waive its continuing objection to this Request and Interrogatory 1 to the extent that it seeks information of non-party employees that the City is prohibited from disclosing by Personnel Privacy Act, N.C.G.S. § 160A-168 and because such unlawful disclosure invades privacy rights of persons not a party to this litigation. The City responds to this Interrogatory subject to the Court's issuance of the September 26, 2022 Stipulated Protective Order (D.E. 30] governing the disclosure of any such information.

Finally, the City objects to this Request and Interrogatory 1 on the grounds that: 1.) the relevant decisionmakers involved with Plaintiff's discipline were not involved in many, if not most, of the discipline issued to Employees 22 through 96; 2.) while the discipline found in all documents being produced was for policy violations for which the Plaintiff was cited, the

employees were not similarly situated in that the nature of the offenses committed varied in degree of seriousness as compared to the serious nature of Plaintiff's policy violations; 3.) the facts surrounding the discipline, in many, if not most cases, were not sufficiently similar to the facts surrounding Plaintiff's discipline; and, 4.) the request for discipline dating from 2012 is unreasonable and irrelevant, particularly because the Department was under a different administration with different executive management in 2019, when Plaintiff was disciplined.  Subject to the objections previously asserted, the City provides documents Bates #000365 through #004104.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **City's Responses to Plaintiff's First Set of Discovery Requests to Plaintiff** was served by email to opposing counsel to the following address:

Valerie L. Bateman
NEW SOUTH LAW FIRM
Email: valerie@newsouthlawfirm.com

June K. Allison
NEW SOUTH LAW FIRM
Email: june@newsouthlawfirm.com

This the 9th day of November, 2022.

Respectfully submitted,

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By:      /s/ Alice Tejada
ALICE TEJADA
Senior Associate City Attorney
NC State Bar No. 23909
P.O. Box 590
Raleigh, NC 27602
Telephone: (919) 996-2004
Facsimile: (919) 996-7021
Email: Alice.Tejada@raleighnc.gov
ATTORNEYS FOR DEFENDANT CITY
OF RALEIGH



I2021-003

## FINDINGS & RECOMMENDATIONS

| Employee 33 | Assignment: North District / B2 |
|---|---|
| Complainant | RPD |
| Allegation | DOI 1100-01 Executive Polices |
| | DOI 1104-01: Rules of Conduct |
| | DOI 1104-02: Deportment |
| | DOI 1104-04 Compliance with Laws |
| | DOI 1106-07: Secondary Employment |
| | DOI 1108-04: Evidence and Found Property |
| | DOI 1108-05: Submission of Police Reports |
| | DOI 1109-14: Domestic and Family Violence. |
| | DOI 1109-17 Mobile Computer Terminals |
| | DOI 1109-18: Body Worn Cameras |

**Allegation #1:**

**Date/Time of Occurrence:** November 13, 2020 at 1908 hours

Facts:

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
000885

I2021-003

DOI 1100-01 Executive Policies stresses the importance of integrity. Officers are to be forthright and honest and to maintain the highest ethical standards of character and conduct. Officers are accountable for his/her actions and duties. Officers will demonstrate professional accountability by taking responsibility for his/her actions and decisions. It is a violation of DOI 1100-01 for Employee 33 to have lied to his supervisor and other departmental employees when questioned about his actions related to this incident. These actions were dishonest and a displayed a lack of integrity. This fact was exacerbated by Employee 33's staging the tire change.

As to the allegation of RPD DOI Violation 1100-01Executive Policies, it is determined to be sustained.

**Findings:** As to the allegations of **RPD Violation 1104-02 Deportment and RPD Violation 1100-01 Executive Policies**: **Sustained**

**Recommendations:** Termination from Employment. This allegation is supported on its own by evidence; however, the recommendation is combined with the remaining allegations.

2

**Allegation #2:**

**Date/Time of Occurrence:** February 2, 2021 at 2307 hours

It is alleged that **Employee 33**    failed to complete a case report as required by policy during a domestic violence investigation at 1355 Garden Crest Rd.

- Detailed interviews were conducted with the involved officer, witness officers and civilians.

- Available reports were reviewed.

Facts:

**Findings:** As to the allegation of **RPD Violation 1109-14 Domestic and Family Violence**: **Sustained**

**Recommendation:** Termination from employment is recommended. This discipline is combined with the remaining allegations. While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of **Employee 33** are aggravating factors and the recommendation is termination from employment.

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
000887

I2021-003

Allegation #3:

**Date/Time of Occurrence:** February 12, 2021 at 0049 hours

It is alleged that **Employee 33** was rude and disrespectful while speaking with a female citizen during a trespassing call at the Hyatt hotel at North Hills on the above-mentioned date.

- Detailed interviews were conducted with the involved officer, witness officers and civilians.

- Available reports were reviewed.

Facts:

As to the allegation of RPD DOI Violation 1104-01 Rules of Conduct, it is determined to be sustained.

As to the allegation of RPD DOI Violation 1104-02 Deportment, it is determined to be sustained.

**Findings:** As to the allegations of **RPD Violation 1104-01 Rules of Conduct and 1104-02 Deportment: Sustained**

4

**Recommendation:**  Termination from employment is recommended.  This discipline is combined with the remaining allegations.  While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of **Employee 33** are aggravating factors and the recommendation is termination from employment.

Allegation #4

**Date/Time of Occurrence:**  February 16, 2021 at 0222 hours

5

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

000889

I2021-003

As to the allegation of RPD DOI Violation 1104-01 Rules of Conduct, it is determined to be sustained.

As to the allegation of RPD DOI Violation 1104-02 Deportment, it is determined to be sustained.

As to the allegation of DOI Violation 1109-18 Body Worn Cameras, it is determined to be sustained.

**Findings:** As to the allegations of **RPD Violation 1104-01 Rules of Conduct, 1104-02 Deportment and 1109-18 Body Worn Cameras: Sustained**

**Recommendation:** Termination from employment is recommended. This discipline is combined with the remaining allegations. While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of **Employee 33** are aggravating factors and the recommendation is termination from employment.

Allegation #5:

**Date/Time of Occurrence:** February of 2021

It is alleged that **Employee 33** failed to complete a police report and failed to properly store found property in February of 2021.

6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

000890

- Detailed interviews were conducted with the involved officer, witness officers and civilians.

- Available reports were reviewed.

Facts:

**Findings:** As to the allegations of **RPD Violation 1108-04 Evidence and Found Property, 1108-05 Submission of Police Reports:  Sustained**

**Recommendation:**  Termination from employment is recommended.  This discipline is combined with the remaining allegations.  While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of Employee 33 are aggravating factors and the recommendation is termination from employment.

7

I2021-003

Allegation #6:

It is alleged that Employee 33 worked more than the approved number of hours (240) during on-duty, secondary and extra duty employment on multiple 28-day pay cycles between July of 2020 and February of 2021.

**Date/Time of Occurrence:** These allegations span the timeframe between 11.13.20 – 2.28.21

Facts:

Employee 33 has been involved in multiple policy violations over the time period in question.

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports and video surveillance were reviewed.

On March 1, 2021, a seven-month review of Employee 33's on duty, secondary employment and extra duty (off duty) hours worked was completed.

During the pay cycle from August 15, 2020 to September 11, 2020, Employee 33 worked 186.50 hours of off duty. During that time, he worked 139.50 Regular hours. He worked a total of 326 total hours during this pay cycle.

During the pay cycle from September 12, 2020 to October 9, 2020, Employee 33 worked a total of 193.75 hours of off duty. During this time, he worked 163.00 Regular hours. He worked a total of 356.75 hours during this pay cycle.

During the pay cycle from October 10, 2020 to November 6, 2020, Employee 33 worked a total of 169.50 hours of off duty. During this time, he worked 186.50 Regular hours. He worked a total of 356.00 hours during this pay cycle.

During the pay cycle from November 7, 2020 to December 4, 2020, Employee 33 worked a total of 158.00 hours of off duty. During this time, he worked 136.00 Regular hours. He worked a total of 294.00 hours during this pay cycle.

During the pay cycle from December 5, 2020 to January 1, 2021, Employee 33 worked a total of 164.00 hours of off duty. During this time, he worked 136.00 Regular hours. He worked a total of 300.00 hours during this pay cycle.

During the pay cycle from January 2, 2021 to January 29, 2021, Employee 33 worked a total of 126.50 hours of off duty. During this time, he worked 124.00 Regular hours. He worked a total of 250.50 hours during this pay cycle.

Each of these examples constitutes a separate violation of DOI 1106-07 Secondary Employment.

8

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

000892

DOI 1106-07 stresses that employees shall schedule no more than a total of 240 hours of on-duty work and Secondary or Extra Duty Employment hours during any one 28-day cycle. Typically, officers will reach the two hundred and forty (240) hour limit through a combination of 168 hours of on-duty time and 72 hours of Secondary or Extra Duty Employment.

Employee 33 was interviewed regarding each of these allegations by the Raleigh Police Department Office of Professional Standards. In each instance, he admitted to engaging in the behavior listed in the allegation.

As to the allegation of RPD DOI Violation 1106-07 Secondary Employment, it is determined to be sustained.

**Findings:** As to the allegations of **RPD Violation 110607 Secondary Employment**: **Sustained**

**Recommendation:** Termination from employment is recommended. This discipline is combined with the remaining allegations. While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of Employee 33 are aggravating factors and the recommendation is termination from employment.

Allegation #7

It is alleged that Employee 33 allowed his DCI certification to lapse for a significant amount of time and he was unable to perform tasks regarding DCI entries assigned to him by his supervisor.

**Date/Time of Occurrence:** May 12, 2021

Facts:

9

As to the allegation of RPD DOI Violation 1109-17 Mobile Computer Terminals, it is determined to be sustained.

**Findings:** As to the allegations of **RPD Violation 1109-17 Mobile Computer Terminals**: **Sustained**

**Recommendation:** Termination from employment is recommended. This discipline is combined with the remaining allegations. While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of **Employee 33** are aggravating factors and the recommendation is termination from employment.

Allegation #8

It is alleged that **Employee 33**'s personal vehicle was not properly registered as required by North Carolina General Statute. He has consistently been using this vehicle to travel to and from work

**Date/Time of Occurrence:** May 12, 2021

Facts:

As to the allegation of RPD DOI Violation 110404 Compliance with Laws, it is determined to be sustained.

**Findings:** As to the allegations of **RPD Violation 1104-04 Compliance with Laws**: **Sustained**

**Recommendation:** Termination from employment is recommended. This discipline is combined with the remaining allegations. While a violation of this policy would not necessarily warrant a recommendation of termination from employment, the seriousness and degree of the combined actions of **Employee 33** are aggravating factors and the recommendation is termination from employment.

10

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

I2021-003

**Recommendation:**

Termination from employment is recommended. While individual violations of
these policies would not necessarily warrant a recommendation of termination
from employment, the seriousness and degree of the combined actions of Officer
Employee 33 are aggravating factors and the recommendation is termination from
employment.

Major D.A. Dike
**Office of Professional Standards**
**Raleigh Police Department**
**May 18, 2021**

Served by:  MAJOR D.A. D

Received by:

Date:  5.24.2021

11

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
000895

## Coyne, Amanda

| | |
|---|---|
| **From:** | Riggsbee, Karen |
| **Sent:** | Tuesday, April 12, 2016 1:08 PM |
| **To:** | Marley, Greer; Hairston, Terry; Matthews, Justin; Davis, Anthony |
| **Cc:** | Perry, Joseph; Coyne, Amanda; Hall, Brian |
| **Subject:** | FW: IAU findings - notification of command [confidential personnel matter] |

Sgt. Marley ,

This is a notification of findings for IAU case I2015-037. You are being sent this notification as the involved officer is your immediate subordinate.

The employee has been notified of the outcome. No further action is necessary on your part.

IAU complaint number/complainant:           I2015-037/RPD

Involved Employee:                          **Employee 64**

Nature of Investigation and Final Findings:

   1. **Departmental Rule Violation (1104-04) Compliance with Laws, Regulations and Orders - Sustained**

Recommendation for above:

   1. **Termination of Employment**

Nature of Investigation and Final Findings:

   1. **Departmental Rule Violation (1104-07) Sick Leave - Sustained**

Recommendation for above:

   1. **Termination of Employment**

This record is for your information only. **Further dissemination by any addressee is prohibited.**

Please let me know if you need further information, have questions, or concerns.

KHR

Karen Riggsbee, Major
Office of Professional Standards
Raleigh Police Department
President – National Internal Affairs Investigators Association
(919) 996-3155

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER           001827
Case 5:21-cv-00491-BO   Document 34-26   Filed 03/31/23   Page 18 of 33

# RALEIGH POLICE DEPARTMENT
## COMPLAINT FORM
Rev. 8/11

**Date Reported:** August 27, 2015   **Time Reported:**   15:15   **Complaint Number:**   I2015-037

**Accused:**   Employee 64    M.O.    FOPS/DTD D
     (Name)      (Rank)    (Assigned Division)   (Code No.)

**Complainant:**    RPD     6716 Six Forks Rd., Raleigh NC 27615
     (Name)       (Address)

       919-996-3155
(Home Phone)   (Work Phone)   (Date of Birth)   (Sex)   (Race)

**Incident:**   August 22, 2015    12:00    218 Cabarrus Street W   Raleigh, NC 27601
     (Date)      (Time)      (Location)

**Incident Synopsis:**
It is alleged that **Employee 64**   lied to Sgt. J.D. Ellington during an official inquiry into his sick leave note.

**Specific Allegations:** 1. Departmental Rule Violation: 1104-04 Compliance with Laws, Regulations, and Orders

     2. Departmental Rule Violation: 1104-7 Sick Leave

**How Reported:** (check one): ☒in person ☐by letter ☐by telephone ☐ by email

**Witness(es):**
1.
2.
3.
4.

**Complaint Form Completed By:** Sergeant B.W. Hall   *B.W.Hall*   9-4-15

I, Officer, **Employee 64** , acknowledge that I have received a copy of this complaint form.

# Employee 64

Officer signature and code number      9/4/15   Date

# RALEIGH POLICE DEPARTMENT
## INTERNAL AFFAIRS UNIT SUMMARY

Rev. 1/97

FILE: 12015-037

Accused: Employee 64

Complainant: RPD

Date Reported: August 27, 2015     Date Investigation Completed:

Court Disposition:  ☐ Guilty     ☐ Not Guilty     ☐ N.A.

| ALLEGATION: | DISPOSITION: |
|---|---|
| 1. Departmental Rule Violation: 1104-04 Compliance with Laws | S |
| 2. Departmental Rule Violation: 1104-07 Sick Leave | S |
| 3. | |

### Complaint Disposition Legend:

S = Sustained       NS = Not Sustained       U = Unfounded

PF = Policy Failure       PC = Proper Conduct       O = Other

Summary Filed By: _____ Sergeant B.W. Hall _BWH_ 9-8-15

Case Reviewed By: _____

_R.A.McLeod_ Sergeant / 1575     9-30-15
                    Lieutenant

Captain

_K.d._ Major     9/30/15
Office of Professional Standards     Date

# FINDINGS & RECOMMENDATIONS

| Employee 64 | *Assignment: FOPS/DTD/D* |
|---|---|
| **Complainant** | RPD |
| **Allegation** | • DOI Violation (1104-04) Compliance with Laws, Regulations and Orders<br>• Departmental Rule Violation (1104-07) Sick Leave |

**Allegation #1**: DOI Violation (110404) Compliance with Laws, Regulations and Orders

**Date/Time of Occurrence**: August 22, 2015 and September 4, 2015/Various

**Facts:** On the aforementioned dates, Employee 64 was questioned by two Field Operations supervisors and Internal Affairs Sergeants concerning his recent sick leave, and more specifically, the date and time he received his doctor's note releasing him back to full duty. Although given ample opportunity to be truthful during his questioning, Employee 64 chose to provide false information to his supervisors and then to Internal Affairs Sergeants during an Administrative Investigation. Officer Employee 64 was truthful only when directly confronted by an Internal Affairs Sergeant at the end of the interview. Employee 64 admitted to making poor choices and not being truthful during the investigations.

The behavior exhibited by Employee 64 is contrary to the Law Enforcement Code of Ethics, violates RPD DOI and is not conduct expected of a law enforcement officer. The violation of DOI 1104-04 is sustained.

**Findings**: As to the allegation of **DOI Violation (1104-04) Compliance with Laws, Regulations and Orders**, it is deemed that the allegation be classified as **Sustained.**

**Recommendation:** Termination from Employment.

**Allegation #2**: DOI Violation (1104-07) Sick Leave

**Date/Time of Occurrence**: August 2015 /Various

**Facts:** On September 19, 2014, Employee 64 received a Disciplinary Action Form related to DOI 1104-07 (Sick Leave) for numerous violations of this policy. As a part of

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

I2015-037

Employee 64 's discipline associated with this DA, Employee 64 was required to submit a doctor's certificate to his supervisor upon his return to duty for any uses of sick leave for a one year period. The DA also stipulated that failure to abide by this requirement would subject Employee 64 to disciplinary action, up to and including dismissal.

On August 17, 2015, Employee 64 reported for work (in-service training) after calling out sick since July 24, 2015. Employee 64 and his Sergeant texted back and forth concerning his doctor's certificate. Employee 64 indicated he did not have the note with him and he would be late for training if he went home to retrieve it. Officer Employee 64's sergeant advised him to bring his note when he returned for regular duty. When Employee 64 returned for work, he produced a doctor's certificate that was time stamped after the original text messages.

Upon review of a timeline supplied by Employee 64's sergeant, it is apparent Officer Employee 64 did not have a doctor's certificate to return to work when questioned, via text, by his sergeant on August 17, 2015. There is no indication from any information Officer Employee 64 provided that he was seen by a physician until after his supervisor requested a certificate for him to return to full duty.

When Employee 64 returned to work (in-service training) on August 12, 2015, without a doctor's certificate, he was in violation of the requirements of the DA he received on September 19, 2014. Furthermore, he was dishonest with his sergeant when he indicated he had been released by a doctor to return to work. Based on all the information provided, by Employee 64. his sergeant and the time stamped doctor's certificate, the allegation of DOI Violation (1104-07) Sick Leave is sustained.

**Findings:** As to the allegation of **DOI Violation (1104-07) Sick Leave**, it is deemed that the allegation be classified as **Sustained.**

**Recommendation:** While this violation alone may not necessarily result in a recommendation for termination, considered in conjunction with the violation of DOI 1104-04 (Compliance with Laws, Regulations and Orders), the recommendation for this violation is termination from employment.

**Major K.H. Riggsbee**
**Office of Professional Standards**
**Raleigh Police Department**
**March 23, 2016**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 5:21-cv-00491-BO   Document 34-26   Filed 03/31/23   Page 22 of 33
001831

I2020-006



## FINDINGS & RECOMMENDATIONS

| Employee 91 | Assignment: Admin/Academy |
|---|---|
| Complainant | RPD |
| Allegation | 1. DOI 1100-01: Executive Policies/Integrity |

**Allegation 1:** DOI 1100-01: Executive Policies/Integrity

**Date of Occurrence:** February 17, 2020

**Facts:** It is alleged that **Employee 91** was untruthful when questioned by Sgt. J.J. Yardley about an incident involving her lost RPD recruit identification card.

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

The investigation revealed that **Employee 91** was dishonest with both Training Officer Macario and Sgt. J.J. Yardley about her telephone contact with a member of the Garner Police Department regarding **Employee 91** lost and found City of Raleigh identification card. **Employee 91** was asked several times by Sgt. J.J. Yardley if she had spoken over the telephone with a member of the Garner Police Department to which **Employee 91** answered in the negative and stated that she had not spoken to a member of the Garner Police Department. Additionally, **Employee 91** was untruthful when she stated to Sgt. Yardley that she had received a voicemail from a Garner Police Officer regarding her found identification.

The witnesses were interviewed and all statements were recorded and submitted for transcription.

The 121st Session of the Raleigh Police Academy recruits received a curriculum/code manual outlining dishonesty and integrity. Within Part 2: Rules of Conduct of that manual in the section titled "Dishonesty" on page 12 it states, *"Dishonesty will not be condoned. Cheating, stealing, or dishonesty will result in a recommendation for dismissal"*. When interviewed, **Employee 91** acknowledged that she was not truthful and was dishonest when asked questions related to this incident and that she had lied to both Officer Macario and Sgt. Yardley.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 5:21-cv-00491-BO   Document 34-26   Filed 03/31/23   Page 23 of 33

I2020-006

In addition to the Academy curriculum/code manual directive, Raleigh Police DOI 1100-01: Executive Policies outlines integrity. The directive states, *"We strive to be forthright and honest in all affairs and to maintain the highest moral and ethical standards of character and conduct. We are accountable for our duties and actions. We will freely give reasons for our actions and accept responsibility for them"*. **Employee 91** should have been honest, truthful and should have acted with integrity when asked questions by her supervisor.

**Findings:** As to the allegation of DOI 1100-01 Executive Policies (Integrity), it is determined to be: **Sustained**

**Recommendations:** The determined recommendation is termination of employment.

Major T.G. Vestal
Office of Professional Standards
Raleigh Police Department
February 21, 2020

Served by:

Received by:

Date: 2/21/20

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 5:21-cv-00491-BO   Document 34-26   Filed 03/31/23   Page 24 of 33

I2021-024 & 026



## FINDINGS & RECOMMENDATIONS

| Employee 95 | Assignment: SED/D3 |
|---|---|
| Complainant | RPD |
| Allegation | DOI 1100-01 Executive Policies |
| | DOI 1104-04 Compliance with Laws, Regulations and Orders (2) |
| | DOI 1106-03 DCI/NCIC Security and Access |
| | NCGS 14-259 Harboring or Aiding Certain Persons |
| | DOI 1104-02 Deportment |

The office of Professional Standards was made aware of **Employee 95** 's boyfriend having an active Domestic Violence Protection Order in June 0f 2021. Concerns were raised regarding her ability to have weapons in her home that would place her boyfriend in violation of the order. Arrangements were made for her to store her personal weapons at the Police Firing Range and her duty weapon at the Southeast District station. She was given a direct order by an Internal Affairs Sergeant to refrain from bringing the weapons back into her residence until such time that those actions would no longer place him in violation of the order. This fact is supported by text messages between **Employee 95** and the Internal Affairs Sergeant.

Internal Affairs case I2021-024 originated on October 7, 2021 after **Employee 95** was assaulted by her live-in boyfriend. Allegations related to violations of RPD DOI 1104-04 Compliance with Laws, Regulations and Orders were levied. This investigation was administrative in nature.

During the course of this investigation, separate allegations were levied regarding the abovementioned violations as well as violations of NCGS 14-259 - Harboring or Aiding Certain Persons. As a result, a separate criminal investigation was launched. A different Internal Affairs investigator was assigned to investigate this new case which was criminal in nature (I2021-026).

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

003675

**Allegation# 1:  I2021-024** DOI Policy Violation 1104-04 Compliance with Laws, Regulations and Orders.

**Date/Time of Occurrence:  Various**

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

**Facts:** It is alleged that **Employee 95** violated RPD DOI 1104-04 Compliance with Laws, Regulations and Orders.

This internal investigation began as a result of a domestic incident that occurred at her residence. Initially, she refused to answer the door and by her own admission, hoped that the responding Raleigh Police Officers would just go away. Several concerns were raised that led to allegations of violations of RPD policy and North Carolina General Statute violations. It was alleged that **Employee 95** allowed her live-in boyfriend to operate her motor vehicle when she knew that his license was revoked. In addition, it was alleged that she violated the conditions of his active Domestic Violence Protection Order when she willfully brought her personal and duty weapons into her residence and permitted him to have access to them in violation of a direct order from a supervisor assigned to the Office of Professional Standards.

This investigation revealed that **Employee 95** has been the victim of domestic violence at the hands of her boyfriend for a significant period of time. The couple has been in a dating relationship for approximately 5 years. During her interview on June 29, 2021, she denied ever having been assaulted by her boyfriend. Her statements to Sgt. Davis during that interview were untruthful. The October 21st interview revealed that she has suffered bruises and black eyes from various assaults at the hands of her boyfriend. As a result of the black eyes, she was forced to call out sick from work, but made no attempt to report the incidents.

**Employee 95** admitted that she knew that her boyfriend had an active DVPO but stated that she did not read the restrictions listed on it. She further stated that she brought the weapons back into her residence as a matter of convenience for herself and for the fact that she wanted him to "feel safe" inside the residence when she was working and he was alone at night.

2

She admitted to violation of the direct order from the Internal Affairs supervisor by knowingly brining her weapons back to her residence thereby jeopardizing her boyfriend by violating the conditions of his active DVPO.

This investigation also revealed that **Employee 95** allowed her boyfriend to consistently operate her motor vehicle knowing that his operator's license was indefinitely revoked.

DOI 1104-04 states, "*Employees will promptly obey any lawful and appropriate order from a higher ranking supervisor regardless of whether the employee is on or off duty to include orders relayed by an officer of the same or lesser rank. Employees who do not promptly obey lawful orders may be considered insubordinate and may be subject to disciplinary action or dismissal.*"

These actions represent significant conduct violations. In summary, there is ample evidence to support this allegation.

**Findings:** As to the allegation of violation of DOI 1104-04 Compliance with Laws, Orders and Regulations, it is deemed to be **SUSTAINED.**


**Allegation# 2: I2021-024** DOI Policy Violation DOI 1106-03 DCI/NCIC Security and Access

**Date/Time of Occurrence:** May 20, 2021 / 1032 hours

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

**Facts:** It is alleged that **Employee 95** violated RPD DOI 1106-03 DCI/NCIC Security and Access.

This investigation revealed that **Employee 95** allowed her boyfriend to consistently operate her motor vehicle knowing that his operator's license was revoked.

**Employee 95**'s boyfriend's license was revoked indefinitely on November 15, 2019. His license has never been returned to good standing. **Employee 95** ran her boyfriend's information through CJLEADS on May 20, 2021 at 1032 hours.

3

During her interview on October 21st, she admitted to running her boyfriend's information for personal reasons. When questioned, she advised that she knew it was a violation of policy.

DOI 1106-03 states, *"Data which is collected and stored in DCI/NCIC must have been gathered in the performance of the employee's official duties. Data which is not job-related is not to be submitted."*

Her actions represent a conduct violation. In summary, there is ample evidence to support this allegation.

**Findings:** As to the allegation of violation of DOI 1106-03 DCI/NCIC Security and Access, it is deemed to be **SUSTAINED.**

**Allegation# 3: I2021-024** DOI Policy Violation DOI 1100-01 Executive Policies

**Date/Time of Occurrence:** Various

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

**Facts:** It is alleged that **Employee 95** violated RPD DOI 1100-01 Executive Policies.

The factual basis provided in the allegations listed above saliently demonstrate poor judgment and decision making on the part of **Employee 95**.

DOI 1100-01 States, *"Our core values are fundamental convictions and beliefs that we hold so firmly that they cannot be altered by circumstances. Our values and how we define our values serve as our ethical compass in making decisions and taking actions".*

As her judgment and decision making were tied to her reprehensible conduct, They will be considered significant conduct violations. In summary, there is ample evidence to support this allegation.

**Findings:** As to the allegation of violation of DOI 1100-01 Executive Policies, it is deemed to be **SUSTAINED.**

4

**Allegation# 4: I2021-026** Violation of NCGS 14-259 Harboring or Aiding Certain Persons

**Date/Time of Occurrence:  October 24, 2021 – October 26, 2021**

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

**Facts:** It is alleged that **Employee 95** violated NCGS 14-259 Harboring or Aiding Certain Persons

Raleigh Police were summoned to **Employee 95** 's residence by neighbors who reported an ongoing domestic violence situation. She initially refused to answer the door but ultimately exited her residence to speak with officers. Her boyfriend had assaulted her and fled from the scene with her motor vehicle and bank card. As a result of that investigation, a warrant for Assault on a Female was drawn on her boyfriend, a fact that she was made aware of on the night of the assault by the investigating officer.

Her boyfriend fled the state and was tracked to the Washington D.C. area. The investigation revealed that her boyfriend had returned to the Raleigh area several days later. Officers investigating the case became aware of his location through investigative means and observed he and **Employee 95** enter her motor vehicle and begin driving away from her residence.

A vehicle stop was performed shortly thereafter. **Employee 95** was driving the vehicle when it was stopped. Her boyfriend was taken into custody on the outstanding charges. Upon exiting the vehicle, she spontaneously uttered "I really fucked up" to one of the officers involved in the vehicle stop.

During her interview on November 2nd, she admitted to being contacted by her boyfriend via telephone and picking him up at a residence in Southwest Raleigh. She further admitted to bringing him to her residence and allowing him to spend several days there. During this same interview, she admitted that she never called 911 or made contact with any member of RPD regarding her knowledge of the wanted fugitive's location. In fact, she later stated that she probably would not have notified RPD about his whereabouts. She was fully aware of the outstanding warrant and the lengths RPD was going to in an attempt to locate him.

5

I2021-024 & 026

She again stated that she was aware that she had been given a direct order not to bring the firearms to her residence in his presence and chose to willfully violate the order.

NCGS 14-259 states, "*It shall be unlawful for any person knowing or having reasonable cause to believe, that such person is a fugitive from justice or is otherwise the subject of an outstanding warrant for arrest or order of arrest, to conceal, hide, harbor, feed, clothe or otherwise aid and comfort in any manner to any such person. Fugitive from justice shall, for the purpose of this provision, mean any person who has fled from any other jurisdiction to avoid prosecution for a crime*".

The facts of this investigation were submitted to the Wake County District Attorney's Office for review. The decision to prosecute this case criminally was declined by the Wake County District Attorney's Office. As such, there will be no criminal repercussions.

Regrettably, the elements of the crime have been met and will therefore be considered for the administrative investigation.

These actions represent significant conduct violations. In summary, there is ample evidence to support this allegation.

As such, the allegation of violation of **NCGS 14-259 Harboring or Aiding Certain Persons,** is deemed to be classified as **SUSTAINED (**administratively**).**


**Allegation #5: I2021-026** DOI Policy Violation 1104-04 Compliance with Laws, Regulations and Orders.

**Date/Time of Occurrence: October 24, 2021 – October 26, 2021**

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

**Facts:** It is alleged that **Employee 95** violated DOI 1104-04 Compliance with Laws, Regulations and Orders.

For a full summary of the factual basis regarding this case, see the allegations listed in Allegation #4.

6

During her interview on November 2nd, **Employee 95** admitted that she knew her actions regarding hiding and allowing her boyfriend to stay at her residence were against the law. She also knowingly violated a direct order given to her by a supervisor regarding possession of her firearms at her residence. Finally, she admitted to withholding substantial information from RPD regarding an active fugitive investigation for which she was the victim. In fact, she stated that she was not going to make RPD aware that he had in fact returned to Raleigh.

DOI 1104-04 states, "*All Departmental employees shall abide by all laws and ordinances. Any member violating any law or ordinance may be subject to disciplinary action including dismissal*".

These actions represent significant conduct violations. In summary, there is ample evidence to support this allegation.

As such, the allegation of violation of RPD **DOI 1104-04 Compliance with Laws, Orders and Regulations,** is deemed to be classified as **SUSTAINED.**

**Allegation #6: I2021-026** DOI Policy Violation 1104-02 Deportment – Conduct Expected of an Employee

**Date/Time of Occurrence: October 24, 2021 – October 26, 2021**

- Detailed interviews were conducted with the involved officer and other witnesses.

- Available reports were reviewed.

**Facts:** It is alleged that **Employee 95** violated DOI 1104-02 Deportment – Conduct Expected of an Employee

For a full summary of the factual basis regarding this case, see the allegations listed above

DOI 1104-02 states, "*Employees shall maintain a level of conduct in their personal and business affairs on duty as well as off duty when the employee's conduct has a connection to or impact on the employee's official duties that is consistent with the highest standards of the law enforcement profession. Unacceptable conduct is defined as conduct which may be reasonably interpreted to disrupt harmony and cooperative working relationships*

7

*among co-workers, damage close working relationships, impede the performance of the employee's duties, interfere with the operation of the Department, undermine the mission of the Department, conflict with the employee's responsibilities within the Department, demonstrate disrespect and insubordination, or abuse the authority and public accountability that the employee's role entails. Such actions include but are not limited to any conduct or act of moral turpitude which may be reasonably be interpreted to disrupt or impair the operation, efficiency, or ability of the employee and/or the Department to meet their law enforcement obligations.*

**Employee 95**'s conduct as identified in both investigations, saliently demonstrates violations of nearly every aspect of this policy as it relates to the conduct expected of an RPD employee.

Her conduct clearly had an impact on her official duties demonstrated when she misused police investigative software for personal reasons, her actions caused significant disruption to the criminal investigation being conducted to locate her boyfriend who was a fugitive from justice. Her conduct was also disruptive to working relationships with a number of different units attempting to assist her in her domestic violence case. They certainly interfered with the operation of the Department and conflicted with her responsibilities as an RPD employee. She also filed for a DVPO after the assault on October 7th and failed to follow through with it.

Her conduct can easily and reasonably be interpreted as disruptive and impairing to the operation, efficiency and ability of the employee and/or the Department to meet their law enforcement obligations.

These actions represent significant conduct violations. In summary, there is ample evidence to support this allegation.

As such, the allegation of violation of RPD **DOI 1104-02 Deportment – Conduct Expected of an Employee,** is deemed to be classified as **SUSTAINED.**

### Recommendation:

These allegations are supported on their own by the aforementioned evidence and constitute significant conduct violations, as such, the progressive discipline matrix need not be followed.

While individual violations of these policies would not necessarily warrant a recommendation for termination, the extreme seriousness and degree of the

8

I2021-024 & 026

combined actions of **Employee 95** are aggravating factors and as a result the recommendation is termination from employment.

Major D.A. Dike
**Office of Professional Standards**
**Raleigh Police Department**
December 16, 2021

Served by:

Received by:

Date: January 5, 2022

9

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
003683