THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-00491-BO

| PATRICK D. LANDS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **CITY OF RALEIGH'S Fed. R. Civ. P. 56** |
| v. | ) | **AND LOCAL CIVIL RULE 56.1** |
| | ) | **STATEMENT OF MATERIAL FACTS AS** |
| CITY OF RALEIGH, | ) | **TO WHICH THERE IS NO GENUINE** |
| | ) | **ISSUE TO BE TRIED, IN SUPPORT OF** |
| Defendant. | ) | **THE CITY'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1 Defendant City of Raleigh ("the City") respectfully submits this statement of material facts as to which there is no genuine issue to be tried.

1. The City hired Plaintiff on December 8, 2008 for a police officer position at the Raleigh Police Department ("RPD"). (D.E. 1 ¶ 8.)

2. Plaintiff's termination letter and notice of pre-disciplinary conference letter incorporate the reasons that the City provided for his termination. Ex. J, Pl. Answer to City's Interrog. ¶ 12; and Ex. G, Lands Depo. 72:14-73:9.

3. Plaintiff was required to review and acknowledge receipt of all RPD's Departmental Operating Instructions ("DOI") via the RPD's Moodle program. Ex. L, Pl. Admis. to City's Req. at 7.

4. Plaintiff reviewed all RPD DOIs during his tenure as a police recruit. *Id*.

5. Plaintiff reviewed and acknowledged receipt of RPD DOI 1106-07, Secondary Employment, during his employment with the City. *Id*. at 8.

6. On September 13, 2017, Plaintiff submitted a completed RPD Interoffice Memorandum requesting FMLA leave to begin on September 9, 2017 through December 9, 2017. Ex. B-1 at 9.

7. Plaintiff acknowledged in his request that he: 1.) had reviewed the FMLA policy and had contacted the City's Human Resources Department, 2.) had completed and submitted the required Certification of Health Care Provider form, 3.) had completed the City's Request for FMLA Form (Attachment Al) and the Benefits Coverage or Cancellation Form (Attachment A2), and 4.) understood that failure to return to work within three (3) days of December 9, 2017 would constitute a resignation from City employment. *Id*.

8. On September 13, 2017, Plaintiff also submitted the remainder of his FMLA leave application to City Human Resources Department Analyst Marsha Bell requesting leave to begin on September 8, 2017, with an expected return to work date of December 8, 2017 . Ex. C ¶ 4 at Ex. 1 at 3 ; and Ex. 2 at 1-2.

9. As part of his FMLA leave request, Plaintiff elected to use his accrued sick, extended sick, compensatory, and vacation leave . Ex. C-2 at 1, 3; and (D.E. 1 ¶ 42.)

10. On September 28, 2017, Plaintiff provided Ms. Bell with a medical certification from Plaintiff's father's physician, Lars O. Gardner, D.O., for intermittent leave between August 25, 2017 and November 25, 2017 as medically necessary because "patient will require help with ADLS, transportation to and from appointments, etc." Ex. C-2 at 5-8.

11. On October 2, 2017, Plaintiff was sent the Notice of Designation granting FMLA leave from September 8, 2017 through December 7, 2017. C ¶ 5 at Ex. 1 at 4-6.

12. Plaintiff was on FMLA leave with pay for the duration of the time on the Notice of Designation. Ex. D-1 at 791-92.

2

13. On December 5, 2017, Plaintiff sought information to request an extension of his leave. Ex. B-1 at 4.

14. On January 3, 2018, Plaintiff was approved for leave until February 14, 2018 after showing his full-time assistance was needed for "all normal daily household needs. Additionally, he will need assistance with hygiene, nourishment, and basic need tasks we would normally complete and take for granite (sic)." Ex. D-1 at 505.

15. After February 14, 2018, Plaintiff submitted several additional requests for extended leave, which were approved on the basis that his father continued to require full-time care. *Id*. at 508; and Ex. C-3 at 36, 38, 39.

16. Plaintiff remained out on paid leave until December 7, 2018, at which time he returned to work and was also promoted to the position of Detective. Ex. C-3 at 42; and (D.E. 1 ¶ 21.)

17. On July 3, 2019, Captain C.T. Barnett of the RPD Internal Affairs Unit ("IAU") took a call from a citizen from Emerald Isle, North Carolina who wanted to file a complaint against Plaintiff for unscrupulous business practices that Plaintiff conducted as a Project Manager with "Total Construction & Company". Ex. D-1 at 105; and (D.E. 1 ¶ 23.)

18. Mr. Hunt stated that Plaintiff had gone to Emerald Isle after a storm later identified as Hurricane Florence, in September or October 2018, going door to door to solicit business to fix their homes. *Id*. at 106-108. According to Mr. Hunt, Plaintiff had told multiple people that they would be in their homes by Thanksgiving or Christmas of 2018. Ex. D-1 at 108.

19. Captain Barnett assigned the case for investigation to IAU Sergeant Bridget Stranahan with an assigned case number of C2019-014. All documentation and investigative activities became a part of Plaintiff's personnel file. Ex. D ¶¶ 5-6 at Ex. 1 at 1065, 1075.

3

20. Sergeant Stranahan was assigned to investigate allegations of violations of DOI 1100-01 Conduct Unbecoming, DOI 1106-07 Secondary Employment, and the City's Standard Operating Procedure ("SOP") 300-9A Human Resources Leave Policy in reference to Plaintiff's actions while on leave and to check if the Emerald Isle Police Department had opened a criminal investigation on him. *Id*. at 1065; and (D.E. 1 ¶ 26.)

21. Sergeant Stranahan interviewed other Total Construction customers with complaints about Plaintiff and/or Total Construction, as well as other business associates. Ex. D-1 at 1, 277, 310-11, 326-27, 352-59, 409-12, 468.

22. Sergeant Stranahan found constructions permits, online posts and a business card identifying Plaintiff as a Project Manager, contact, and/or owner of Total Construction, as well as other evidence tending to show that Plaintiff's father did not require full time care from Plaintiff, including evidence that Plaintiff's father was vacationing, going to concerts, and supervising the remodeling of his own home without assistance. *Id*. at 515-27, 592-646, 681, 929.

23. The focus of Sergeant Stranahan's investigation was from September through December 2018, the time that Plaintiff travelled to Emerald Isle, North Carolina on behalf of Total Construction. *Id*. at 138.

24. During his IAU interview, Plaintiff admitted that he: 1.) "checked on jobs, ordered materials, watched after his [father's] people" during the hurricane recovery and restoration work; 2.) had stayed at Emerald Isle multiple days trying to get referrals and stopping at people's homes to obtain business; 3.) after September 2018, he was only providing financial support to his father; 4.) as of September, he was not "where [his father] was everyday."; 5.) worked for his father, "[b]asically the entire time I was out on leave."; 6.) was being paid by the

4

City to take care of his father; 7.) the purpose of sick leave was, "You stay at home or with the person you are out sick for."; 8.) knew that under normal policy he would not be allowed to do stay out on sick leave to work for his father. *Id*. at 138-39, 140-44, 166.

25. During his interview, Plaintiff further admitted that he: 1.) did not tell his supervisor that he was using his sick leave to work for his father, and that this failure was a "lie of omission."; intentionally did not tell his supervisor he was working during sick leave because he knew it would not be approved; 3.) "could've asked permission to be doing work for [Plaintiff's father] while I was on leave."; 4.) "should have asked permission to be doing that work."; 5.) Plaintiff did not disclose that he was working for his father because he had a "fear of asking and being told no."; 6.) if he had not taken leave, he wouldn't have obviously been able to manage projects or anything."; 7.) knew it was wrong to work during his leave and felt remorse over it; 8.) did not do the right thing by the City; 9.) did not ask for permission because, "if it wasn't questioned, then it (sic) couldn't be told no."; and 10.) should have asked for permission to work secondary duty to include his time on FMLA leave. *Id*. at 169, 170, 207-08, 212, 215-17.

26. Plaintiff went on a cruise without his father for four or five days in November or December 2017 during his approved designated FMLA leave days. *Id*. at 143.

27. Following his interview, Plaintiff was placed on administrative leave with pay. *Id*. at 1017.

28. Based on Plaintiff's admissions that included misconduct during FMLA leave, additional policy violations for City SOP 300-20 Family/Medical Leave and DOI 1104-07 Sick Leave were added to the Complaint Form on November 12, 2019. *Id*. at 2; and (D.E. 1 ¶ 30.)

5

29. Major T.S. Jordan reviewed and considered the content of file No. C2019-014 and all corresponding RPD and City of Raleigh policies prior to drafting the final Findings and Recommendations on November 14, 2019. Ex. F ¶¶ 6-7.

30. Major Jordan found that Plaintiff had violated COR SOP 300-9A (formerly, SOP 300-11) Human Resources Leave Policy, COR SOP 300-20 Family/Medical Leave Policy, DOI 1104-07 Sick Leave, DOI 1106-07 Secondary Employment, and DOI 1100-01 Executive Policy/Conduct Unbecoming, and recommended termination. Ex. F ¶¶ 6-7; Ex. D-1 at 4-13; and (D.E. 1 ¶ 32.)

31. Prior to making a final decision, Major Jordan afforded Plaintiff a pre-termination hearing and also considered a letter submitted by Plaintiff stating that he assisted his father with activities of daily living, assisted with his father's employment, and that he did not receive additional income for the time he spent assisting his father. *Id*. at 991-92.

32. After considering Plaintiff's letter, Major Jordan decided to terminate Plaintiff. During the termination hearing, Major Jordan supported his decision by discussing the fact that 1.) none of Dr. Gardner's letters provided by Plaintiff supported assistance with employment; 2.) the details of C2019-014 made clear that Plaintiff was prohibited from engaging in secondary employment according to City and RPD policy; 3.) Plaintiff acknowledged that he did not seek approval to work secondary employment; 4.) no secondary employment was approved by RPD during the time he was out on sick leave; and 5.) the details of C2019-014 support that Plaintiff engaged in integrity violations as prohibited by DOI 1100-01. *Id*. at 999; and Ex. F ¶ 9.

33. All of the City's management who took part in the decision to terminate Plaintiff thoroughly reviewed C2019-014. *Id*. ¶ 6; and Ex. D-1 at 1029-30, 1058.

34. Plaintiff did not care for his father during the four to five days that he went on a cruise in November or December 2017 because he was not assisting his father with transportation, normal daily household needs, hygiene, nourishment, and other basic needs while Plaintiff was on vacation. *Id*. at *143*.

35. Plaintiff received paid leave benefits from the City to care for his father for the days that Plaintiff went on a cruise. Ex. G, 50:18-24.

36. During his FMLA leave, Plaintiff, 1.) called to check on his father's projects, would occasionally take building materials to people, and would follow up to see how progress was going. He basically acted as a project manager or supervisor; 2.) was physically present at worksites because "[y]ou can't build something without physically going to it"; and, 3.) met in person with customers. Ex. G at 47:2-6; *Id*. at 47:7-11; Ex. H, Total Construction Depo. at 12:23-13:1; and, *Id*. at 13:2-6.

37. During his FMLA leave, 1.) Total Construction was working on about a dozen projects between September and December 2017; 2.) Plaintiff's father was mostly in physical therapy or at home while Plaintiff was working; 3.) Plaintiff conducted business for Total Construction during regular business hours, Monday through Friday; and, 4.) there were days that Plaintiff was handling business for Total Construction where Plaintiff did not assist his father with care at all. *Id*. at 14:18-23; *Id*. at 13:7-11; Ex. G. at 52:14-18; and, *Id*. at 52:19-53:1.

38. RPD's secondary employment policy, DOI 1106-07 stated that, "To be eligible for Secondary Employment or Extra Duty Employment, officers and civilian employees must be employees of the City, must be in good standing with the Department, and must not be on sick leave, family sick leave, FMLA leave, light duty, or administrative duty." Ex. D-1 at 937.

39. RPD's and the City's sick leave policies, DOI 1104-07 authorized the use of sick leave for personal "illness, medical appointments, and dental appointments of an immediate family member". *Id*. at 958, 1105.

40. The City's FMLA policy was a reiteration of the FMLA's allowance of leave for the care of a parent with a serious health condition. *Id*. at 975.

41. Total Construction issued Plaintiff a K-1 tax form for 2017 showing that he had 31% ownership of the company, and that the share of his distribution was $59,403 that year. Ex. I, Total Construction Response to D.E. 29 Order.

42. Plaintiff knew he was "out officially on FMLA" leave during his 2017 cruise, but did not seek permission or notify the City that he was going on vacation during time that he was being paid sick leave benefits on designated FMLA leave. Ex. D-1 at 169, 171.

43. Plaintiff's admissions of his lie of omission in obtain City leave benefits, to include FMLA leave, for purposes other than the care of his father, were fraudulent misrepresentations. *Id*. at 169, 170, 215.

44. The City did not investigate Plaintiff for integrity, secondary employment and leave abuse violations until after it received reports of potential misconduct, approximately one year and six months after Plaintiff's designated FMLA leave ended. (D.E. 1 ¶¶ 19, 23, 26.)

45. The City granted Plaintiff approximately one year and three months of paid sick leave to care for his father. (D.E. 1 ¶¶ 19, 21.); and Ex. J at 7.

46. DOI 1100-01 requires RPD employees to embody the value of integrity by striving "to be forthright and honest in all [] affairs and to maintain the highest moral and ethical standards of character and conduct." Ex. D-1 at 964.

47. Major Jordan made a reasonably informed and considered decision to terminate Plaintiff. *Id*. at 999; and Ex. F ¶ 9.

48. Based on Major Jordan's review of all of the evidence in C2019-014, he had an honest belief that Plaintiff engaged in leave abuse, violations of RPD's secondary employment policy, and integrity violations. *Id*. at 4-13; and Ex. F ¶ 9.

49. The City routinely grants FMLA leave requests. Ex. B ¶ 8 at Ex. 2.

50. Major Jordan terminated another RPD officer for violations of the secondary employment policy. Ex. E at Ex. 2.

51. The City has terminated RPD employees who have engaged in dishonesty in the abuse of their sick leave, as well as for other acts of dishonesty. Ex. L, City's Second Supplemental Disc. Produc. Resp. ¶ 2, Bates Nos. 1827-31, 3308-09, 3675-83.

52. The City has also terminated RPD employees who have violated the secondary employment policy. *Id*. at 885-95.

53. At no time did Major Jordan retaliate against Plaintiff. Ex. F ¶ 10.

This the 31st of March, 2023.

                Respectfully submitted,

                **CITY OF RALEIGH**
                **Robin Tatum, City Attorney**

                By: /s/ Alice Tejada
                     ALICE TEJADA
                     Senior Associate City Attorney
                     NC State Bar No. 23909
                     Post Office Box 590
                     Raleigh, North Carolina 27602
                     Telephone: (919) 996-2004
                     Facsimile: (919) 996-7021
                     Email: Alice.Tejada@raleighnc.gov
                     ATTORNEYS FOR DEFENDANT

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:21-CV-00491-BO

| | |
|---|---|
| PATRICK D. LANDS, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CITY OF RALEIGH, )<br>)<br>Defendant. ) | CERTIFICATE OF SERVICE |

I hereby certify that on March 31, 2023, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| Valerie L. Bateman<br>NEW SOUTH LAW FIRM<br>valerie@newsouthlawfirm.com | June K. Allison<br>NEW SOUTH LAW FIRM<br>june@newsouthlawfirm.com |
|---|---|

This the 31st day of March, 2023.

Respectfully submitted,

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By: /s/ Alice Tejada
ALICE TEJADA
Senior Associate City Attorney
NC State Bar No. 23909
Post Office Box 590
Raleigh, North Carolina 27602
Telephone: (919) 996-2004
Facsimile: (919) 996-7021
Email: Alice.Tejada@raleighnc.gov
ATTORNEYS FOR DEFENDANT

10