IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-491-BO

PATRICK D. LANDS,                )
                  Plaintiff,     )
                                 )
v.                               )            ORDER
                                 )
CITY OF RALEIGH,                 )
                  Defendant.     )

This cause comes before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and the motion is ripe for ruling. Also pending and ripe for disposition is defendant's motion to seal. For the reasons that follow, the motion for summary judgment is granted and the motion to seal is granted.

## BACKGROUND

Plaintiff is a former employee of the Raleigh, North Carolina Police Department whose employment was terminated. He filed this action alleging a single claim for retaliation in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2). The following facts are undisputed unless otherwise indicated. [DE 40].

Plaintiff was hired by defendant on December 8, 2008, as a police officer. On September 13, 2017, plaintiff submitted an interoffice memorandum requesting FMLA leave beginning September 9, 2017, through December 9, 2017. He also submitted an FMLA leave application to human resources requesting FMLA leave beginning September 8, 2017, and an expected return to work date of December 8, 2017. As part of his FMLA request, plaintiff elected to use accrued sick, extended sick, compensatory, and vacation leave. Plaintiff was notified on October 2, 2017,

through a notice of designation that he was approved for FMLA leave from September 8, 2017, through December 7, 2017. The City of Raleigh routinely grants FMLA leave requests.

Plaintiff's request for FMLA leave was based on his need to provide care to his father, who had been seriously injured in an accident. In support of his FMLA request, plaintiff provided defendant with a medical certification form from his father's physician which reflected the need for intermittent leave between August 25, 2017, and November 25, 2017, in order to assist his father with activities of daily living (ADLs) and transportation to and from appointments.

Plaintiff was on FMLA leave with pay for the period outlined in the October 2017 notice of designation. On December 5, 2017, plaintiff sought information regarding obtaining an extension of his leave. On January 3, 2018, plaintiff was approved for leave until February 14, 2018, after demonstrating that his father continued to need assistance with "all normal daily household needs." [DE 34-12] Ex. D-1 p. 505. Plaintiff submitted additional requests for extended leave which defendant approved, and remained on paid leave until December 7, 2018, at which time he returned to work. Upon his return to work, plaintiff was also promoted to the rank of detective.

On July 3, 2019, Captain C.T. Barnett, with the Raleigh Police Department's Internal Affairs Unit, received a phone call from an individual from Emerald Isle, North Carolina who sought to file a complaint against plaintiff. The caller indicated that plaintiff, who had represented himself as a project manager with Total Construction "& Company," had engaged in unscrupulous business practices in soliciting and failing to complete repair and construction work on his home following Hurricane Florence, which made landfall in North Carolina on September 14, 2018.[1] Total Construction is a construction and remodeling company owned by plaintiff's father. The

---

[1] *See* https://www.weather.gov/ilm/HurricaneFlorence (last visited Feb. 6, 2024).

citizen complaint was assigned to Sergeant Bridget Stranahan to investigate. Sergeant Stranahan was assigned to investigate allegations that plaintiff violated Departmental Operating Instruction (DOI) 1100-01 Conduct Unbecoming, DOI 1106-07 Secondary Employment, and Standard Operating Procedure (SOP) 300-9A Human Resources Leave Policy.

Sergeant Stranahan focused her investigation on the time period between September 2018 and December 2018, when plaintiff travelled to Emerald Isle on behalf of Total Construction. As part of her investigation, Sergeant Stranahan interviewed other Total Construction customers and business associates. One customer described that following the hurricane plaintiff had identified himself as a retired, or semi-retired police officer doing contracting work and had promised the customer that they would be back in their home by Christmas, but at the time of the call in July 2019 the customer was still not back in the house. Ex. D-1 p. 273-309. The customer further described that plaintiff had told him that Total Construction uses two sets of accounting books – one for the insurance company and one for the business – and that Total Construction would be able to get the customer's deductible back. *Id.* p. 277; 299. Another Emerald Isle homeowner told Sergeant Stranahan that plaintiff had "sold" him on the high level of service he would be provided by Total Construction and that he was promised they would be back in their home by the first of the year, which did not happen. *Id.* pp. 408-447. This customer had recently had surgery and contends that plaintiff assured him that he, plaintiff, "would personally be on island and take care of it." *Id.* p. 410. The customer described plaintiff as someone who cuts corners and is willing to lie, and that the construction company had done poor work all over the island. *Id.* pp. 412-415. Plaintiff disputes that he used his employment as a police officer to gain an advantage, lied to any customers, or engaged in unscrupulous business practices. *See, generally,* [DE 38] P. Lands Aff.
3

Sergeant Stranahan also interviewed plaintiff, after which he was placed on administrative leave with pay. Due to statements made by plaintiff during his interview, additional violations for SOP 300-20 Family/Medical Leave and DOI 1104-07 Sick Leave were added to the internal complaint.

Major T.S. Jordan, after reviewing the file and relevant policies, found that plaintiff had violated SOP 300-9A, SOP 300-20, DOI 1104-07, DOI 1106-07, and DOI 1100-01, and recommended that plaintiff's employment be terminated. Prior to rendering a final decision, plaintiff was afforded a pre-termination hearing. Major Jordan also considered additional evidence in the form of a letter from plaintiff's father outlining the assistance that plaintiff had provided him with both daily activities and his father's business, noting that plaintiff did not receive income for providing that assistance. Plaintiff appealed the decision to terminate his employment to the City Manager's Office, and the decision was upheld. [DE 34-15] Ex. D-1 p. 1058.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary

4

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).[2]

The FMLA entitles eligible employees to a total of twelve weeks of unpaid leave "in order to care for [a] parent [with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Congress enacted the FMLA to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 202 (4th Cir. 2016) (quoting 29 U.S.C. § 2601(b)(1), (2)). The FMLA makes it unlawful for "any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Section 2615(a)(2) has been interpreted to "to protect employees from discrimination or retaliation *for exercising their substantive rights under the FMLA.*" *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 245 (4th Cir. 2020) (emphasis in original) (internal quotations and citation omitted). "The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior[,]" *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016), and courts are not to act as "super-personnel department[s] weighing the prudence

---

[2] In his opposition to defendant's motion for summary judgment, plaintiff contends that he is entitled to summary judgment because no reasonable jury could conclude that the reasons provided by defendant for plaintiff's termination in fact justify termination. The Court notes that plaintiff has not filed a cross-motion for summary judgment, which would be the typical way to contend that a genuine issue of material fact does not exist and that a party is entitled to judgment in his favor. For the reasons discussed below, however, the Court declines plaintiff's invitation to enter judgment as a matter of law in his favor.

5

of employment decisions." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation and citation omitted).

A plaintiff may prove retaliation in violation of the FMLA by either producing "direct and indirect evidence of retaliatory animus or" demonstrating retaliatory intent through circumstantial evidence, which is evaluated under the familiar *McDonnell Douglas* burden shifting framework. *Fry*, 964 F.3d at 244. "Direct evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (internal quotations omitted, quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)).

The burden shifting framework requires a plaintiff to first establish a prima facie case by demonstrating that "he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Sharif*, 841 F.3d at 203 (internal quotations omitted). The burden then shifts to the employer to provide "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* "If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination." *Id.* The plaintiff must then produce "sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation." *Id.* At the pretext stage, the plaintiff must show that retaliation was "a but-for cause" of the adverse action. *Fry*, 964 F.3d at 246.

In his opposition to the motion for summary judgment, plaintiff appears to concede that he proceeds under the burden-shifting framework, and the Court limits its analysis accordingly. It is

undisputed that plaintiff engaged in protected activity by taking FMLA leave and that he suffered an adverse employment action when his employment was terminated. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). The decision to investigate plaintiff for department and city policy violations did not occur until approximately eighteen months after plaintiff's FMLA leave ended. *See Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) (typically close temporal proximity between adverse action and protected activity is necessary to show causation). However, even assuming that plaintiff has established a causal connection and thus a prima facie case, he has failed to rebut defendant's proffered legitimate basis for his termination.

Though much of the dispute in this case concerns whether the FMLA would permit plaintiff to engage in business activities for his father as a part of his provision of care and psychological support, the Court need not reach this issue. *See* 29 C.F.R. § 825.124; *Haley v. Town of Wake Forest*, No. 5:16-CV-347-FL, 2018 WL 4689445, at *8 (E.D.N.C. Sept. 28, 2018), *aff'd*, 775 F. App'x 89 (4th Cir. 2019) (noting that whether certain activities are protected under the FMLA can constitute a close question). Plaintiff's employment was terminated after the Raleigh Police Department conducted an internal affairs investigation into his activities undertaken for his father's construction company while on FMLA and extended sick leave. The investigation and subsequent employment decision concluded that plaintiff had violated several of defendant's policies, including engaging in secondary employment while on extended sick leave and engaging in conduct unbecoming. Adverse employment actions imposed for violations of workplace policies do not violate the FMLA. *See Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 793 (4th Cir. 2023) (violation of rule prohibiting dishonesty is a legitimate and nondiscriminatory reason for adverse employment action); *Phillips v. New Millennium Bldg. Sys.*, No. 20-2095, 2022 U.S. App. LEXIS

7

16875, at *6 (4th Cir. June 17, 2022) (violation of company leave policy a legitimate, nondiscriminatory reason).

Plaintiff argues that defendant's proffered bases are not legitimate or nondiscriminatory because they are, at bottom, incorrect. But "when an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [a court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (internal quotation marks omitted). Plaintiff's arguments are better considered in determining whether he can show that these proffered legitimate reasons were pretextual, as he cannot demonstrate that violating any of the above-referenced policies *could* be grounds for termination. *See also Boston v. Trialcard, Inc.*, 75 F.4th 861, 867 (8th Cir. 2023) ("We have recognized that 'violations of company policy are legitimate, nondiscriminatory reasons for termination.'") (citation omitted).

Accordingly, plaintiff must come forward with evidence which would show that the legitimate, nondiscriminatory bases for his termination were, in fact, pretext for FMLA discrimination. To do so, he must come forward with more than the evidence required to sustain his burden to show a prima facie case of discrimination. *See Tuan H. Nguyen v. Austin Quality Foods, Inc.*, 974 F. Supp. 2d 879, 884 (E.D.N.C. 2013).

"Courts utilize the 'honest belief rule' to evaluate employers' responses to claims of employment discrimination, under which '[an] employee must present evidence reasonably calling into question the honesty of his employer's belief....'" *Egler v. Am. Airlines, Inc.*, No. 5:17-CV-73-FL, 2019 WL 826469, at *5 (E.D.N.C. Feb. 21, 2019) (quoting *DeJarnette*, 133 F.3d at 299); *see also Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 147 (3d Cir. 2017) ("an employer's honest belief that its employee was misusing FMLA leave can defeat an FMLA retaliation claim.");

8

*Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) ("employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose"). Here, plaintiff has proffered no non-speculative evidence that defendant did not honestly believe that plaintiff's conduct while on leave violated its policies. For example, plaintiff argues that plaintiff "was on long-term FMLA with enough accumulated sick leave to carry him through, which Defendants did not like and for which they intended to punish him." [DE 37 p. 7]. But he has presented no evidence which would create an issue of fact as to whether defendant did not like his taking sick leave or whether defendant intended to punish plaintiff for taking extended sick leave.

Though plaintiff focuses his argument on whether or not he did, in fact, violate any policies, he has failed to come forward with any evidence which would show that defendant did not believe that he had violated its policies prior to its termination of his employment. Importantly, plaintiff admitted during his internal affairs investigation that he "worked" for his father "[b]asically the entire time [he] was out on leave," Ex. D-1 p. 143, that he was only providing financial support to his father from September 2018 to December 2018, *id.* p. 166, that he had been dishonest with the police department by not informing them that he was using his leave to work for his father, *id.* p. 169, that he told a client of his father's construction company that he was a police officer, or used to be a police officer, to support the impression that he was honest and not going to "screw [the client] over," *id.* p. 190, that he knew he should have asked for permission to work for his father's business while he was out on leave but did not, *id.* p. 212, and that his actions after his father's accident were clearly against policy. *Id.* p. 216.[3] Plaintiff's affidavit filed in response to the

---

[3] Sgt. Stranahan also clarified during plaintiff's interview that defendant was not concerned with plaintiff's actions while on FMLA leave. Ex. D-1 p.p. 216-217.

9

summary judgment motion indicates that his "statements during the investigation about what [he] should have done were an attempt to get a good recommendation from the investigation and to get sympathy for [his] situation." [DE 38] P. Lands Aff. ¶ 21. However, this self-serving statement was not a part of the record when plaintiff's investigation was reviewed by the relevant decision-makers. In other words, plaintiff's own statements during the internal investigation supported the City's conclusions that he had violated internal policies, and further provides support to its contention that it honestly believed plaintiff violated multiple policies which would support his termination.

To show pretext, plaintiff attempts to rely on comparator evidence. In order "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (cleaned up, citation omitted). In support of this argument, plaintiff has submitted his own affidavit which asserts that he knows of other police officers who engaged in worse behavior and were not terminated. *See* [DE 38]. He includes a redacted list of officers with a brief explanation of their wrongful conduct and subsequent discipline. Plaintiff makes no attempt, however, to show that any alleged comparator dealt with the same supervisor as plaintiff, was subject to the same standards, or that there are no differentiating or mitigating circumstances which would distinguish their conduct from plaintiff's. In other words, plaintiff has at this stage failed to create a genuine issue of fact as to comparator evidence.

Plaintiff has also failed to identify any inconsistencies, contradictions, or post-hoc rationalization by defendant regarding its proffered bases for his termination which would support

10

a finding of pretext. *Elliott v. Rollins*, No. 5:11-CV-693-FL, 2013 U.S. Dist. LEXIS 140926, at *39 (E.D.N.C. Sep. 13, 2013). It is further undisputed that the investigation into plaintiff's activities while on leave were *not* focused on the time-period covered by the FMLA, but the twelve months after that during which plaintiff remained on leave. Based on its interview of plaintiff and additional evidence collected during its investigation, defendant concluded that plaintiff had engaged in work activities in violation of its secondary employment and sick leave policies as well as violated its integrity policy by using his position as a police officer to garner trust while engaged in other work.

True, defendant also cited violation of its FMLA policy as a ground for termination. But even if plaintiff is correct, and his "work" for his father during the September – December 2017 period was not in violation of the FMLA, that defendant mistakenly, but honestly believed that his activities, many of which were not specifically addressed in the notes provided by his father's physician, were too far attenuated to constitute providing "care" under the FMLA, does not create an issue of fact as to whether defendant terminated plaintiff's employment in retaliation for taking FMLA leave. *See Haley*, 2018 U.S. Dist. LEXIS 167662, at *28-29 ("plaintiff provides no evidence that defendants did not honestly believe plaintiff had violated defendants' sick leave policy, and because of this violation, terminated him."). Accordingly, even taking all inferences in the light most favorable to plaintiff, he has failed to rebut defendant's proffer of legitimate, non-discriminatory reasons for the termination of his employment. Summary judgment in defendant's favor is therefore appropriate.

Defendant has also filed a motion to seal certain confidential documents, specifically confidential personnel documents of non-party employees of defendant which are shielded from public disclosure pursuant to N.C. Gen. Stat. § 160A-168. Defendant also seeks to seal false,

11

inaccurate, and potentially defamatory information regarding non-parties to this suit. Plaintiff has failed to respond to the motion, and the time for doing so has expired.

For those reasons outlined in the memorandum in support, [DE 45], the motion is granted. The Clerk of Court shall maintain under seal [DE 38-7], [DE 34-26], and [DE 38-10].

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for summary judgment [DE 32] is GRANTED. Plaintiff's unopposed motion for leave to exceed page limitation [DE 36] is GRANTED. Defendant's unopposed motion to seal [DE 44] is GRANTED. The clerk is DIRECTED to enter judgment in favor of defendant and close this case.

SO ORDERED, this __6__ day of February 2024.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE